IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL PEKOL<br>　　　　　Plaintiff,<br><br>　　v.<br><br>CSL BEHRING<br>　　　　　Defendant. | CIVIL ACTION NO. 21-4404 |

## MEMORANDUM OPINION

**Rufe, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**July 24, 2023**

Plaintiff Daniel Pekol has sued his former employer, bringing claims of discrimination on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"),[1] discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964,[2] and retaliation. Defendant CSL Behring has moved for summary judgment on all claims. For the reasons explained below, Defendant's motion for summary judgment will be granted.

**I.　　BACKGROUND**

Plaintiff was employed in technology security for Defendant from January 2, 2007 until August 6, 2020, when he was fired.[3] He was 43 years old at the time of his termination.[4] In 2019, a woman named Ellyn Schneck was hired to work on Plaintiff's team.[5] Plaintiff wanted to hire a

---

[1] 29 U.S.C. § 621, *et seq.*

[2] 42 U.S.C. § 2000e-2(a)(1), *et seq.*

[3] Pl.'s Counterstatement Material Facts [Doc. No. 17] ¶¶ 4,5. Contrary to Judge Rufe's Policies and Procedures for Summary Judgment, the parties did not agree upon a joint statement of undisputed material facts. Instead, Defendant filed a statement of facts it contends are undisputed, and Plaintiff responded with both an answer denying or admitting the facts, as well as a counterstatement of material facts. As Plaintiff is the non-moving party, the Court draws the factual background from Plaintiff's statement of facts and those of Defendant's statements that Plaintiff admits, as well as from the documents of record.

[4] Pl.'s Counterstatement Material Facts [Doc. No. 17] ¶ 1.

[5] Pl.'s Counterstatement Material Facts [Doc. No. 17] ¶ 10.

male candidate instead, but Plaintiff's supervisor, Ed Ferrara, expressed a desire to hire more women onto the team.[6] Schneck was recommended by one of Defendant's employees, Rebecca Daniels.[7] Schneck was transferred off Plaintiff's team after several months and later reported that this was because Plaintiff created an intolerable environment, although Plaintiff contends that Schneck was transferred for poor performance.[8]

Defendant launched an internal investigation into Plaintiff's behavior following Schneck's complaint.[9] Defendant interviewed Plaintiff regarding the allegations.[10] While investigating the allegations, Defendant interviewed Plaintiff's coworkers, including three of 18 on a list Plaintiff provided.[11] According to the report, many of Plaintiff's coworkers, both men and women, identified him without prompting as a bully who intimidated, pressured, and abused others.[12] They described Plaintiff as "relentless," which made people uncomfortable,[13] and as an "abrasive" person who "likes a single throat to choke."[14] An employee described an incident where Plaintiff aggressively banged on Schneck's keyboard before pushing Schneck's rolling chair aside.[15] Multiple employees reported that they feared retaliation from Plaintiff for cooperating with the investigation, and one employee described Plaintiff as "abusive" and transferred departments to

---

[6] Pl.'s Counterstatement Material Facts [Doc. No. 17] ¶ 11.

[7] Pl.'s Counterstatement Material Facts [Doc. No. 17] ¶ 10.

[8] Pl.'s Counterstatement Material Facts [Doc. No. 17] ¶ ¶ 17-18.

[9] Pl.'s Counterstatement Material Facts [Doc. No. 17] ¶ 10; Defendant also investigated whether Plaintiff had violated cybersecurity policy. Def.'s Ex. H [Doc. No. 14-9] at CSL 00342.

[10] Def.'s Statement Material Facts [Doc. No. 14-1] ¶ 38.

[11] Def.'s Statement Material Facts [Doc. No. 14-1] ¶¶ 42-43.

[12] Def.'s Statement of Undisputed Facts [Doc. No. 14-1] ¶¶ 25-37; Def.'s Ex. H [Doc. No. 14-9].

[13] Def.'s Ex. H [Doc. No. 14-9] at CSL 000344.

[14] Def.'s Ex. H [Doc. No. 14-9] at CSL 000344.

[15] Def.'s Ex. H [Doc. No. 14-9] at CSL 000344. Plaintiff denies that this incident occurred. Pl.'s Answer to Def.'s Statement of Material Facts [Doc. No. 17] ¶ 29.

avoid him.[16] Defendant determined that the allegations that Plaintiff violated its policies by creating a toxic work environment were substantiated.[17] Ferrara terminated Plaintiff on August 6, 2020, by reading him a series of "talking points" provided by Karen Etchberger, another upper-level employee of Defendant's.[18]

Plaintiff contends that the investigation was part of a conspiracy to terminate him. In support of this theory, Plaintiff cites Ferrera's testimony that Etchberger wanted to fire Plaintiff, a picture of an email from Daniels referencing a "plan" regarding Plaintiff, and Schneck's delay in reporting Plaintiff's behavior.[19] Sometime later, Ferrara emailed Plaintiff, explaining that he had since stopped working for Defendant and regretted firing Plaintiff.[20] Ferrara intimated that Etchberger had a role in Ferrara's departure as well.[21] Plaintiff's former role was filled on a temporary, and then a permanent, basis by men.[22]

## II. STANDARD OF REVIEW

A court will award summary judgment on a claim where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[23] A fact is "material" if resolving the dispute over the fact "might affect the outcome of the suit under the governing [substantive] law."[24] A dispute is "genuine" if "the evidence is such that a reasonable jury could

---

[16] Def.'s Ex. H [Doc. No. 14-9] at CSL 000344.

[17] Def.'s Ex. H [Doc. No. 14-9] at CSL 000343. The claims that Plaintiff violated cybersecurity policies were partially substantiated and partially determined inconclusive. Def.'s Ex. H [Doc. No. 14-9] at CSL 000344-45.

[18] Pl.'s Counterstatement Material Facts [Doc. No. 17] ¶ 20.

[19] *See* Pl.'s Opp. to Def.'s Mot. Summ. J. [Doc. No. 17-7] at 6-9.

[20] Pl.'s Counterstatement Material Facts [Doc. No. 17] ¶ 42.

[21] Pl.'s Counterstatement Material Facts [Doc. No. 17] ¶ 42.

[22] Def.'s Statement Material Facts [Doc. No. 14-1] ¶¶ 58-61.

[23] Fed. R. Civ. P. 56(a).

[24] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

return a verdict for the nonmoving party."[25]

A court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[26] In so doing, a court may not weigh the evidence or make credibility determinations.[27] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[28] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[29]

## III.   DISCUSSION

### A.   Assessing Employment Discrimination Cases

Where, as here, there is no direct evidence of discriminatory motive, the Court assesses employment discrimination claims using the framework established in *McDonnell Douglas Corp. v. Green*.[30] Under this framework, the plaintiff must first establish a *prima facie* case of discrimination. An employee can establish a *prima facie* case of discrimination by asserting proof of four elements: 1) the plaintiff belongs to a protected class; 2) they were qualified for the position; 3) they were subject to an adverse employment action; 4) in circumstances giving rise to an inference of discriminatory motive.[31] A plaintiff may establish the fourth element if they either: "(1) introduce evidence of comparators (i.e., similarly situated employees who (a) were not members of the same protected class and (b) were treated more favorably under similar

---

[25] *Id.*

[26] *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[27] *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

[28] *Nitkin v. Main Line Health*, 67 F.4th 565, 571 (3d Cir. 2023) (internal quotation marks and citations omitted).

[29] *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

[30] 411 U.S. 792, 801-02 (1973). *See, e.g., Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021).

[31] *McDonnell Douglas,* 411 U.S. at 802. *See, e.g., Fasold v. Justice*, 409 F.3d 178, 184 (3d Cir. 2005).

circumstances); or (2) rely on circumstantial evidence that otherwise shows a causal nexus between [the plaintiff's] membership in a protected class and the adverse employment action."[32] While it is not the role of the Court to weigh evidence, the Plaintiff must produce evidence that could reasonably create a dispute of material fact without relying on the factfinder to simply discredit the movant's account.[33]

### B.     Plaintiff's Claims for Discrimination on the Basis of Age and Retaliation

To establish a *prima facie* case of discrimination on the basis of age under the ADEA, a plaintiff must either show that they were replaced by an employee young enough to support an inference of discrimination, or provide other facts that support the inference that discrimination was the likely cause of the adverse employment action.[34] Under the ADEA, "a plaintiff need only proffer evidence sufficient to raise the inference that [their] engagement in a protected activity was the *likely* reason for the adverse employment action" to state a *prima facie* case.[35]

In his Complaint, Plaintiff alleged Defendant retaliated and discriminated against him because of his age. However, Plaintiff did not respond to Defendant's summary judgment motion addressing these claims; instead, he focused solely on the sex discrimination claim. In addition, Plaintiff stated in his deposition, "I believe I was terminated because I was a man…. I don't believe I was terminated for any other reason."[36] Therefore, the Court will grant summary judgment on these claims.

---

[32] *Greene v. Virgin Islands Water & Power Auth.*, 557 F. App'x 189, 195 (3d Cir. 2014) (citing *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).

[33] *Id* at 196 (granting summary judgment where "the evidence actually produced amounts to a collection of stray remarks and unconnected, coincidental circumstances, and related speculation and conjecture.").

[34] *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015).

[35] *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 253 (3d Cir. 2017).

[36] Pekol Dep. [Doc. No. 14-5] at 145. Plaintiff also has not identified any possible basis for a retaliation claim.

### C. Plaintiff's Claim for Discrimination on the Basis of Sex

Plaintiff satisfies the first three requirements of a *prima facie* case for sex discrimination. It is not disputed that he is a man, that he was qualified for his position, and that his termination qualified as an adverse employment action. However, Plaintiff has not satisfied the fourth requirement. He has not introduced evidence of any comparators or shown a causal nexus that he was fired on the basis of sex.

First, Plaintiff has not produced any evidence that any women were treated more favorably under similar circumstances. Plaintiff only asserts that company management, especially Ferrara, tacitly advised him to be cautious when interacting with women,[37] which is merely a generalized statement untethered to his termination. Similarly, while Plaintiff broadly claims that Defendant has terminated men without proper cause, he admits that he does not know the circumstances of their terminations or who made the decisions, and he does not produce any evidence that women were treated differently.[38] Plaintiff also has not introduced any evidence that a woman committed misconduct similar to that substantiated by the investigation and was not fired.[39]

Second, Plaintiff has not demonstrated that he was fired because he is a man. The fact that Plaintiff was replaced by men does not prevent Plaintiff from establishing an inference of discrimination, but he must produce some evidence to show that Defendant discriminated on the basis of sex.[40] Plaintiff points to Ferrara and Etchberger's expressed desire to diversify the staff, which Plaintiff argues indicates bias against men.[41] However, diversity initiatives are not improper

---

[37] Pekol Dep. [Doc. No. 14-5] at 134-35.

[38] Pekol Dep. [Doc. No. 14-5] at 9-11; Def.'s Statement Material Facts [Doc. No. 14-1] ¶ 62; Pl.'s Answer to Def.'s Statement of Material Facts [Doc. No. 17] ¶ 62.

[39] *See Parker v. Farley*, 625 F. App'x 77, 82 (3d Cir. 2015).

[40] *See Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352-54 (3d Cir. 1999).

[41] Pl.'s Opp. to Def.'s Mot. Summ. J. [Doc. No. 17] at 8.

as "[a]n employer has every right to be concerned with the diversity of its workforce, and the work environment."[42] Plaintiff also suggests that there was conspiracy among Etchberger, Schneck, and Daniels to have him fired, but the evidence for this conspiracy is scant, and he has presented no evidence that the conspiracy, if it existed, was motivated by Plaintiff's sex. Plaintiff has failed to establish circumstances giving rise to an inference of discrimination and has not made out a *prima facie* case.

Although the failure to establish a *prima facie* case is a sufficient basis for granting summary judgment in favor of Defendant, the Court will complete the analysis under the *McDonnell-Douglas* framework. If a plaintiff can establish a *prima facie* case of discrimination, the burden shifts to the defendant to demonstrate a legitimate, non-discriminatory basis for the adverse employment action.[43] Then, the burden shifts back to the plaintiff to demonstrate, through direct or circumstantial evidence, that the asserted non-discriminatory basis is merely a pretext for discrimination.[44] To do so, the plaintiff must submit evidence which "1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action."[45]

Defendant has offered a legitimate, non-discriminatory reason for Plaintiff's termination: its internal investigation substantiated allegations that Plaintiff violated company policies.[46] To defeat summary judgment, Plaintiff therefore must adduce enough evidence for a factfinder to reasonably find that this reason "was either a *post hoc* fabrication or otherwise did not actually motivate the

---

[42] *Iadimarco v. Runyon* 190 F.3d 151, 164 (3d Cir. 1999).

[43] *McDonnell Douglas Corp.,* 411 U.S. at 802.

[44] *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).

[45] *Id*. at 762.

[46] Def.'s Mot. Summ. J. [Doc. No. 14] at 3.

employment decision (that is, the proffered reason is a pretext)."[47]

Although Plaintiff disagrees with the findings of the internal investigation, he testified in his deposition that he did not dispute that the investigators accurately recorded the statements of his coworkers.[48] Plaintiff takes issue with the fact that the investigators did not interview everyone on the list of references he provided.[49] However, the investigators interviewed numerous employees, including several identified by Plaintiff, as well as Plaintiff himself. Even if Defendant's investigation were incomplete, Plaintiff "cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."[50] In short, Plaintiff has not adduced evidence that Defendant's stated reason was not the real reason for terminating Plaintiff's employment.[51]

## IV. CONCLUSION

For the reasons explained above, Plaintiff Daniel Pekol has not established a *prima facie* case of employment discrimination. In the alternative, he has failed to present sufficient evidence to rebut Defendant CSL Behring's legitimate business reasons for terminating his employment. Therefore, CSL Behring's motion for summary judgment on all claims will be granted. An order will be entered.

---

[47] *Fuentes,* 32 F.3d 764 (internal citations omitted).

[48] Pekol Dep. [Doc. No. 14-5] at 56.

[49] Pl.'s Opp. to Def.'s Mot. Summ. J. [Doc. No. 17] at 14.

[50] *Fuentes*, 32 F.3d at 765 (internal citations omitted).

[51] *Id.* Plaintiff cites *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 856 (D.C. Cir. 2006), for the proposition that an investigation may be so flawed as to be "inexplicably unfair." However, in that case, the interviewer did not speak with the plaintiff, who was also the only Caucasian employee involved. *Id.* Here, Plaintiff was interviewed, as were numerous employees, both men and women, and the investigators gave a reason for not interviewing all of Plaintiff's proposed witnesses—that these individuals were outside of the relevant groups and therefore beyond the scope of the investigation. *See* Def.'s Ex. H [Doc. No. 14-9] at CSL 000345. Thus, the D.C. Circuit's decision in *Mastro* is inapposite. *See Durst v. City of Phila.*, 798 F. App'x 710, 715 (3d Cir. 2020) (distinguishing *Mastro* based on differences in the investigations).